UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DERRICK MOSES and DODD DAVIS, | ) | |
| | ) | |
| Plaintiffs, | ) | 16 C 9972 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| SLOAN VALVE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this suit against their former employer, Sloan Valve Company, Derrick Moses and Dodd Davis allege disparate treatment and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Moses alleges breach of contract. Doc. 13. Sloan moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the hostile work environment and contract claims. Doc. 19. The motion is denied as to the hostile work environment claim and granted as to the contract claim.

**Background**

On a Rule 12(b)(6) motion, the court must accept the operative complaint's well-pleaded factual allegations, with all reasonable inferences drawn in Plaintiffs' favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Plaintiffs' brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to

1

Plaintiffs as those materials permit. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014). In setting forth those facts at the pleading stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

Moses and Davis joined Sloan in the late 1980s. Doc. 13 at ¶¶ 10, 12. Both men are African-American and at all relevant times were members in good standing of Local 7999 of the United Steel, Paper & Forestry, Rubber, Manufacturing, Energy Allied Industrial & Service Workers International Union, AFL-CIO. *Id.* at ¶¶ 1, 11, 13.

On or about February 24, 2012, a Sloan manager found an anonymous note suggesting that he review "receiving cameras on feb. 09 around 11 a" because they showed three African-American employees, including Moses, "stealing drums of rod ends." *Id.* at ¶ 14; Doc. 13-1 at 5. Rod ends, the remnants of brass rods used by Sloan to manufacture many of its products, are typically stored in large barrels, called "drums," before they are recycled or sold to a scrap metal dealer. Doc. 13 at ¶ 9; Doc. 13-1 at 4. On or about March 1, 2012, after conducting an investigation, Sloan fired Moses and the two other African-American employees named in the note, and asked Franklin Park police to arrest them. Doc. 13 at ¶ 16. Moses ultimately was acquitted of all charges. *Id.* at ¶ 17.

The Union grieved Moses's termination. In September 2013, an arbitrator ruled that Sloan had failed to "demonstrate by a clear and convincing preponderance of the evidence that Moses stole anything from his employer," and ordered that Moses be reinstated "to his previous position." Doc. 13-1 at 29-30. The Union filed suit to enforce the arbitration award; the suit was resolved by a "Settlement Agreement and Release," and Moses resumed his position at Sloan in May 2014. Doc. 13 at ¶¶ 23-25. The agreement provided, in relevant part, that the parties "fully

release[d] and discharge[d] each other … from any and all claims and liabilities, whether known or unknown at this time, arising out of the arbitration award, occurrences and transactions that were the subject of the Lawsuit in this case." Doc. 13-2 at 3.

In July 2016, the manager who received the anonymous note back in February 2012 resumed his investigation into the thefts. During an interview with a Sloan employee, the manager "stat[ed] that he had questioned 40 other people [regarding the thefts] and demanded to know what Moses had told [the employee] about the alleged thefts." Doc. 13 at ¶ 28.

On or about August 8, 2016, the manager, accompanied by a Sloan lawyer and an "unknown investigator," met with Davis. *Id*. at ¶ 29. The manager told Davis that he "had been told by unknown parties that [Davis] was 'the lookout guy'" and advised Davis that it would be "in his 'best interests' to cooperate" and explain "how the thefts were perpetrated." *Id*. at ¶¶ 29-30. The manager, lawyer, and investigator repeatedly called Davis "a fucking liar" during the meeting and, at its conclusion, the manager told Davis that he was suspended. *Id*. at ¶¶ 30-31.

The following day, the manager, a Sloan lawyer, and an "unknown law enforcement representative" asked Moses if he "had ever stolen anything from the Company." *Id*. at ¶ 32. When Moses refused to respond, the manager told him that he was fired because he had "'new evidence' regarding the 2012 thefts, in the form of affidavits and statements." *Id*. at ¶¶ 34-35. After Moses reminded the manager of the arbitration award that had resulted in his reinstatement, the manager told Moses that he was suspended. *Id*. at ¶ 36. Sloan did not provide Moses or Davis with any of this "new evidence" and, on October 20, 2016, it notified them both that they were terminated. *Id*. at ¶¶ 38-39.

**Discussion**

I.  **Plaintiffs' Title VII Hostile Work Environment Claim**

Plaintiffs allege that they were subjected to a hostile work environment. Doc. 13 at ¶¶ 57-68. Sloan seeks dismissal on the ground that the complaint fails to allege facts sufficient to state such a claim. Doc. 21 at 5-8. (Sloan initially sought dismissal on exhaustion grounds as well, *id.* at 4-5, but it withdrew that argument in open court, Doc. 38, in light of Plaintiffs' supplemental filing, Doc. 30.)

Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "This prohibition encompasses the creation of a hostile work environment that is severe or pervasive enough to affect the terms and conditions of employment." *Lord v. High Voltage Software*, *Inc.*, 839 F.3d 556, 561 (7th Cir. 2016) (internal quotation marks omitted). For Plaintiffs' hostile work environment claim to survive dismissal, they must allege: "(i) that [their] work environment was objectively and subjectively offensive; (ii) that the harassment was based on [their] race; (iii) that the harassment was pervasive or severe; and (iv) that a legal basis exists for holding [Sloan] liable." *Cable v. FCA US LLC*, 679 F. App'x 473, 476 (7th Cir. 2017); *see also Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 895-96 & n.6 (7th Cir. 2016) (same).

Sloan focuses on the third element, that the harassment be pervasive or severe. Doc. 21 at 5-8; Doc. 24 at 4-8. That element "is in the disjunctive—the conduct must be *either* severe *or* pervasive." *Vance v. Ball State Univ.*, 646 F.3d 461, 469 (7th Cir. 2011), *aff'd*, 133 S. Ct. 2434 (2013). This means that "one extremely serious act of harassment could rise to an actionable level[,] as could a series of less severe acts." *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 693

(7th Cir. 2001); *see Hall v. City of Chicago*, 713 F.3d 325, 330 (7th Cir. 2013).  A court addressing whether a work environment is hostile must consider "factors like the frequency of improper conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance."  *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016); *see also Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 647 (7th Cir. 2011).  In so doing, the court must bear in mind that Title VII does not impose a "general civility code" in the workplace and that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation and internal quotation marks omitted); *see also McPherson v. City of Waukegan*, 379 F.3d 430, 438-39 (7th Cir. 2004).

The parties dispute whether allegations falling outside the 300-day window preceding Plaintiffs' EEOC charge can be considered in determining whether they have stated a viable hostile work environment claim, but the dispute is immaterial because allegations falling within that period—conduct occurring on or after November 5, 2015—suffice.  Plaintiffs allege that Moses was repeatedly referred to as a "thief" and that Davis was called a "fucking liar" by Sloan employees.  Doc. 13 at ¶¶ 30, 45.  Plaintiffs further allege that when they were "accused of stealing in August of 2016 … [they were] verbally threatened, verbally abused, and defamed," and that this harassment was based on their race "and/or improper stereotypes about their race."  *Id*. at ¶¶ 60-61, 67.  These instances of harassment, which (with reasonable inferences drawn in Plaintiffs' favor) had a racial angle, have the requisite severity and frequency to state a claim, at least at the pleading stage.  *See Huri v. Office of the Chief Judge of the Circuit Ct. of Cook Cnty.*, 804 F.3d 826, 834 (7th Cir. 2015) (noting that it was "premature at the pleadings stage to

conclude just how abusive [the plaintiff's] work environment was"); *Amand v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081-83 (3d Cir. 1996) (reversing a defense summary judgment where the plaintiffs had shown that African-American employees were told not to "steal"; that a manager, "after slamming his hand on [a plaintiff's] desk, told her that he knew all about her and two other employees," whose only common characteristic was their race; and that the plaintiffs were "subjected to apparently false accusations of favoritism [and] incompetence"); *Frazier v. Harris*, 266 F. Supp. 2d 853, 862, 867-68 (C.D. Ill. 2003) (denying dismissal where a hostile work environment plaintiff was "called 'the poster child for the NAACP'" and was harassed via internal investigations).

## II. Moses's Breach of Contract Claim

Moses's contract claim alleges that Sloan breached the Settlement Agreement and Release's release provision by firing him in 2016 because of his alleged involvement in the 2012 rod ends thefts. Doc. 13 at ¶¶ 69-81. The release provision states:

> **Release.** Each party to this Agreement, on behalf of their agents, representatives, attorneys and predecessors, successors and assigns of each of them, fully release and discharge each other party, their affiliates, agents, employees, representatives, officers, attorneys, successors and assigns, from any and all *claims and liabilities* whether known or unknown at this time, arising out of the arbitration award, occurrences and transactions that were the subject of the Lawsuit in this case.

Doc. 13-2 at 2 (emphasis added).

Settlement agreements are contracts and are "interpreted according to the law of the jurisdiction in which the contract was created"—here, Illinois. *In re Motorola Secs. Litig.*, 644 F.3d 511, 517 (7th Cir. 2011); *see also Newkirk v. Vill. of Steger*, 536 F.3d 771, 774 (7th Cir. 2008). A court interpreting a contract looks first to its text and, "[i]f the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence." *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882,

6

884 (Ill. 1999); *see also Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 993 (7th Cir. 2007) ("If the language of the contract is clear and unambiguous, we interpret the contract without the use of parol evidence … and contract terms are interpreted according to their plain meaning unless otherwise defined."); *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007) ("A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent."). "If, however, the trial court finds that the language of the contract is susceptible to more than one meaning, then an ambiguity is present" and the court may look to extrinsic evidence. *Air Safety*, 706 N.E.2d at 884; *see also Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prods., Inc.*, 212 F.3d 373, 380 (7th Cir. 2000) ("Notwithstanding the parol evidence rule, extrinsic evidence can be admitted to discover the parties' genuine intent when a contract is ambiguous.").

Sloan argues that the Agreement's mutual "release" from "claims and liabilities … arising out of … occurrences and transactions that were the subject of the Lawsuit in this case" refers only to a "release of legal claims" arising out of the grievance arbitration award and the lawsuit the Union brought to enforce it. Doc. 21 at 9-10. Moses, by contrast, asserts that the release was "intended by both Moses and the union representatives who negotiated the contract to prevent Sloan from returning to the 2012 theft allegations for any purpose." Doc. 13 at ¶ 73. He contends that the release is ambiguous because the parties dispute its scope. Doc. 22 at 6-7.

Sloan's position prevails. Contrary to Moses's submission, a "provision is not rendered ambiguous simply because the parties do not agree on its meaning." *Johnstowne Ctr. P'ship v. Chin*, 458 N.E.2d 480, 481 (Ill. 1983); *see also Emergency Med. Care, Inc. v. Marion Mem'l Hosp.*, 94 F.3d 1059, 1061 (7th Cir. 1996) ("[T]he fact that the parties disagree over the precise meaning of a contractual provision does not render the contract ambiguous."). And the "claims

7

and liabilities" language in the release is unambiguous. As relevant here, a "claim" is "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional," "[a] demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for," or "[a]n interest or remedy recognized at law; the means by which a person can obtain a privilege, possession, or enjoyment of a right or thing," such as, for example, a "claim against [an] employer for wrongful termination." Black's Law Dictionary (10th ed. 2014); *see Chapman v. Engel*, 865 N.E.2d 330, 333 (Ill. App. 2007) (referring to Black's Law Dictionary to determine the "plain, ordinary, and popular meaning of the word 'default'" and "breach of contract" when interpreting a contract); *Hammel v. Ruby*, 487 N.E.2d 409, 414 (Ill. App. 1985) (same for the term "sale"). A "liability" is "[t]he quality, state, or condition of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment," or "[a] financial or pecuniary obligation in a specified amount." Black's Law Dictionary (10th ed. 2014). The unambiguous meaning of a release provision extending to "any and all claims and liabilities," therefore, is a release from any legal remedies or obligations that one party might assert against the other in a contested proceeding.

Given this, the release simply barred Sloan and Moses from pursuing further *legal* action, meaning litigation or arbitration, regarding the events surrounding the 2012 thefts and subsequent arbitration and lawsuit. It did not prohibit Sloan from either investigating those thefts further or terminating Moses if further investigation implicated him. It follows that the release does not cover the actions Sloan took during and after its 2016 investigation into the thefts, and therefore that Moses's contract claim fails as a matter of law.

8

**Conclusion**

For the foregoing reasons, Sloan's partial motion to dismiss is denied as to Plaintiffs' hostile work environment claim and granted as to Moses's contract claim. Because the contract claim cannot be saved by repleading, it is dismissed with prejudice. Sloan shall answer the surviving portions of the operative complaint in their entirety by September 19, 2017.

September 1, 2017                                     _____
                                                                          United States District Judge